IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LEON HARRIS, JR.                                                      PLAINTIFFS
and MALCOM JONES

v.                              CASE NO. 4:24-CV-00641-BSM

BLYTHEVILLE SCHOOL DISTRICT
BOARD OF EDUCATION, *et al.*                                    DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 16] is granted on plaintiffs'

First Amendment retaliation claims under section 1983 and the Arkansas Civil Rights Act,

plaintiffs' Title VII claims, and plaintiffs' individual capacity claims against Hammett under

the Arkansas Civil Rights Act.  Summary judgment is denied on plaintiffs' due process and

Arkansas Whistleblower Act claims.  Summary judgment is grant in part and denied in part

on the issue of punitive damages.

## I. BACKGROUND

Leon Harris and Malcolm Jones are suing the Blytheville School District Board of

Education and its president, Desmond Hammett, because the board voted not to renew their

contracts.  *See* Statement of Undisputed Material Facts  (SUMF) ¶¶ 1–3, Doc. No. 18.

Harris was the district's athletics director and interim head boy's basketball coach from 2022

until his contract was not renewed and Jones was its assistant superintendent from 2023 until

his contract was not renewed.  *Id.*  ¶¶ 2–3.

As athletics director, Harris was responsible for overseeing the district's sports

programs, including managing the coaches and athletes and maintaining the district's athletic facilities. Harris Dep. 19–20, Ex. A, Doc. No. 22. In late 2023, Harris began to hear rumors that his contract would not be renewed for the following school year and that the district was looking to hire another coach. *Id.* 78–79; SUMF ¶¶ 18, 32, 34. Harris filed an internal grievance on April 29, 2024, raising concerns about Hammett's alleged criminal history and interference with Harris's job duties. *Id.* ¶¶ 17, 29–31, 37; Harris Grievance, Ex. A, Doc. No. 16. One week later, the board voted not to renew Harris's contract. *Id.* ¶ 5. Harris asserts that the board took this action because he filed his grievance. Defendants, however, assert that the board's decision was based on Harris's poor performance, misconduct, financial concerns, and his lack of community engagement. *Id.* ¶ 13; Defs.' Br. Supp. Mot. Summ. J. (Defs.' Br.) at 2, Doc. No. 17. Defendants claim that athletic events had to be forfeited because Harris failed to schedule referees and that Harris had been reported for not turning in funds. *Id.* ¶¶ 14–15.

As assistant superintendent, Jones supervised the district's middle school, high school, and sixth-grade academy, including transportation, operations, maintenance, and security. *See* Jones Dep. 14–15, Ex. B, Doc. No. 22. In 2023, Hammett told Jones that he needed to "dust off his resume" because Hammett had received calls from people who did not like Jones. SUMF ¶ 22. Jones also heard rumors that Hammett was blocking his and Jones's contracts from being renewed for the next school year. *Id.* ¶¶ 18, 23. When Jones told the board at its March 2024 meeting that Hammett was "the problem with the district," Hammett responded, "I got your ass." *Id.* ¶ 21. Jones filed an internal grievance four days later

regarding Hammett's conduct at the meeting. *Id.* ¶¶ 19–21. In that grievance, Jones reported that Hammett was wrongfully interfering with his and Harris's job duties, wasting public funds, and attempting to undermine his professional reputation. *Id.*; Jones Grievance, Ex. B, Doc. No. 16. In May 2024, the board voted not to renew Jones's contract, and soon after that, eliminated the assistant superintendent position. *Id.* ¶¶ 1, 7. Defendants state that the decision to not renew Jones's contract was based on Jones's poor performance, district financial issues, and the decision to eliminate the assistant superintendent position. *Id.* ¶¶ 8–12; Defs.'Br at 2. Jones states the decision was retaliation for the grievance he filed.

Harris and Jones are suing the board and Hammett for retaliation under Title VII of the Civil Rights Act and the Arkansas Civil Rights Act; violations of the Arkansas Whistle-Blower Act (AWBA); and First Amendment and Due Process violations under 42 U.S.C. section 1983. Defendants move for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487

F.3d 641, 643 (8th Cir. 2007).   The evidence is not weighed, and no credibility determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

Summary judgment is granted on plaintiffs' First Amendment retaliation claims under section 1983 and the Arkansas Civil Rights Act, plaintiffs' Title VII claims, and plaintiffs' Arkansas Civil Rights Act claims against Hammett in his individual capacity.  Summary judgment is denied on plaintiffs' due process and Arkansas Whistleblower Act claims. Summary judgment is grant in part and denied in part on the issue of punitive damages.

A.     First Amendment Retaliation

Summary judgment is granted on plaintiffs' First Amendment retaliation claims.  To prevail on these claims, plaintiffs must show (1) they engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against them; and (3) the protected conduct was the but-for cause of the defendants' decision to take the adverse employment action.  *See Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654–55 (8th Cir. 2007); *Laney v. City of St. Louis, Mo.*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023) (holding that "but-for causation" rather than "a substantial factor" must now be shown).

### 1. Harris

Summary judgment is granted on Harris's retaliation claim because his grievance was not protected speech under the First Amendment.  This is true because Harris was not

4

speaking primarily as a private citizen on matters of public concern.

A public employee engages in speech protected under the First Amendment if he speaks as a private citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Speech involves a matter of public concern when it can fairly be said to relate to a political, social, or other legitimate concern of the community. *Mayfield v. Missouri House of Representatives*, 122 F.4th 1046, 1053 (8th Cir. 2024) (cleaned up). The context in which the speech occurs—in addition to the content and form of the speech—is also relevant. *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir. 1999) (citations omitted). Harris's grievance alleged that (1) Hammett's position on the board violates Arkansas law because Hammett has a felony conviction; (2) Hammett harassed Harris and undermined his authority by interfering with athletic department matters, such as hiring an interim football coach and renting the school facilities and gym without Harris's knowledge; (3) spread rumors that Harris's tenure as the boy's basketball coach was coming to an end; and (4) created a hostile work environment. *See* Harris Grievance.

While Harris's allegation regarding Hammett's felony conviction is a matter of public concern, the primary purpose of his grievance was to further his own private interests. *See Marlow v. City of Clarendon*, 78 F.4th 410, 418 (8th Cir. 2023) (focus is on the purpose of employee's speech); *Bailey v. Dep't of Elementary and Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006) (when employee speech contains both matters of public concern and personal interest, question is whether speech was primarily intended to further the employee's private interests, rather than raise issues of public concern); *White Plains Towing Corp. v. Patterson*,

991 F.2d 1049, 1059 (2d Cir. 1993) (where public employee raises an issue of public concern solely to further his employment interest, "his First Amendment right to comment on that issue is entitled to little weight") (citing *Connick*, 461 U.S. 138, 154 (1983)).

This is true because Harris's allegations and requested relief focus exclusively on his perception that Hammett was interfering with his ability to do his job; a mere reference to Hammett's criminal history does not overcome this. *Cox v. Dardanell Public School Dist.*, 790 F.2d 668, 672 (8th Cir. 1986) (focus is on whether employee assumed role of concerned public citizen, informing the public that the institution is improperly discharging its duties, or as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution). Harris's testimony regarding his grievance confirms this point. *See, e.g.,* Harris Dep. 42:10–11; 80:12–21 ("[Hammett was] taking power from my job as the [Athletic Director]) ("[Hammett] hinders me from performing my job duties . . . he interfer[es] with all the decisions that were going on in athletics."). Moreover, the internal nature of the grievance and Harris's role as an employee in making the statements weigh against a finding of protected speech. *Buazard*, 172 F.3d at 550.

### 2. *Jones*

Summary judgment is granted on Jones's First Amendment retaliation claim because he was either speaking pursuant to his official duties or reporting matters of private concern. Jones's grievance alleged that Hammett (1) wrongfully intervened in the decision to select a new basketball coach; (2) wasted public funds and violated school policy by letting his

friends and associates use the school gym for free; and (3) threatened to "get" Jones during a board meeting after Jones told a citizen that Hammett was "the problem," in order to intimidate Jones and undermine his professional reputation. *See* Jones Grievance.

While the waste of public money is a matter of public concern, Jones raised this allegation pursuant to his official duties; not as a private citizen. *See* SUMF ¶ 28 ("Jones's job duties included facility use. He was the last signature on any facility use contract."); *Garcetti*, 547 U.S. at 421 (speech not protected if public employee makes statements pursuant to his official duties); *Lyons v. Vaught*, 875 F.3d 1168, 1175 (8th Cir. 2017) (not protected when "[public employee] reports conduct that interferes with his job responsibilities, even if the report is made outside of his chain of command"). Moreover, this statement was "closely tied to a personal employment dispute," and therefore "does not attain the status of public concern simply because 'its subject matter could, in different circumstances, have been the topic of a communication to the public.'" *Dahl v. Rice Cnty, Minn.*, 621 F.3d 740, 744 (8th Cir. 2010) (citing *Connick*, 461 U.S. at 148)). Even if Jones was not speaking pursuant to his official duties, the grievance is still not protected because its primary purpose was to address Hammett's interference with the district's internal protocols and Jones's professional reputation and interests "as the vice-president of the school board." Such claims about "internal . . . practices which are of relevance only to the employees of [the district]" are not protected speech. *Cox,* 790 F.2d at 672. Summary judgment is therefore granted.

### 3. Non-Adverse Actions

7

To the extent plaintiffs claim retaliation based on Hammett's hostility, belittling and interference with Harris's job duties, summary judgment is granted because these are not adverse employment actions. *See Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1107 (8th Cir. 2016) (adverse employment action is tangible change in working conditions that produce a material disadvantage); *Duffy v. McPhillips*, 276 F.3d 988, 991–2 (8th Cir. 2002) (minor shifts or reductions in work responsibility typically not adverse employment actions). Although Hammett's attempt to convince the board to replace Harris as basketball coach could be considered an adverse employment action if it caused his termination, Harris does not allege Hammett succeeded in this effort. Indeed, it appears Harris remained basketball coach for some time after Hammett attempted to have him replaced. Finally, even if these were adverse employment actions, summary judgment would still be appropriate because, as discussed above, plaintiffs' complaints regarding Hammett did not constitute protected activity.

### 4. Arkansas Civil Rights Act

Summary judgment is granted on plaintiffs' ACRA speech-retaliation claims for the same reasons. *See McCullogh*, 559 F.3d at 865 (ACRA claims undergo the same analysis as federal First Amendment retaliation claims).

B.    Title VII

Summary judgment is granted on plaintiffs' Title VII claims because they were abandoned by plaintiffs' failure to respond to the motion for summary judgment on them.

## C.      Due Process

Summary judgment is denied on plaintiffs' procedural due process claims.  To show a violation of procedural due process, plaintiffs must prove they (1) had a protected interest and (2) did not receive adequate procedures.  *Clark v. Kansas City, Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004).  The parties dispute both elements.

These claims, and the responses to them, are a little muddled, and although the hearing requirement is a flexible standard, there appear to be material disputes as to whether plaintiffs were notified of the district's policy and given an opportunity to be heard.  First, defendants' argument that Arkansas law does not entitle plaintiffs to notice and hearing is well-taken, but plaintiffs have presented sufficient facts to indicate their "good name, reputation, [and] integrity" were at stake, nonetheless requiring "notice and an opportunity to heard." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972).  And plaintiffs claim they were not notified or given a chance to respond, either before or after the decision was made.  Defendants' argument that plaintiffs waived these claims by not requesting post-termination process is not convincing because a reasonable jury could find that plaintiffs did not receive notice or opportunities to appeal the board's decision.

## D.      Arkansas Whistle-Blower Act

Summary judgment is denied on plaintiffs' whistle-blower claims.  To prove violations of the Arkansas Whistle-Blower Act, plaintiffs must show they suffered adverse employment actions because they reported a waste of public funds or suspected violation of the law.  Ark. Code Ann. § 21-1-603.  A public employer has an affirmative defense if the

9

adverse action was due to misconduct or poor job performance. *Entmeir v. City of Fort Smith*, 506 S.W.3d 253, 257 (Ark. Ct. App. 2016) (quoting Ark. Code Ann. § 21-1-604(e)(1)).

Jones blew the whistle on alleged public waste, claiming Hammett let his friends and associates host events in the school gym for free in violation of district policies, possibly to "buy votes." Then his contract was not renewed. While quite thin, there appear to be factual disputes as to the nature and extent of Hammett's use of the gym, and the reasons for Jones's non-renewal. Likewise, Harris's grievance was a protected whistle-blowing communication; he appears to have claimed in good faith that Hammett's position on the school board violated Arkansas law because he had a felony conviction. Hammett allegedly told Harris in a Lowe's parking lot that he had "been to prison for selling dope." Harris Dep. 34:1–8. A week after Harris filed the grievance, his contract was not renewed. While also very thin, whether the non-renewal was motivated by Harris's allegations rather than misconduct or poor job performance is a factual dispute for the jury to decide.

Defendants' argument that summary judgment is proper because plaintiffs did not report any actual violations is not convincing because, even if true, good faith reports of suspected violations or waste are also protected. *See* Ark. Code Ann. § 21-1-603; *Bales v. City of Fort Smith*, 505 S.W.3d 705, 712–13 (Ark. 2016) (rejecting argument that finding of no actual waste precludes AWBA claim because only a good faith report is required).

E.     <u>Individual Capacity Claims</u>

Summary judgment is granted on plaintiffs' ACRA claims against Hammett in his

individual capacity. *See Smith v. Ark. Highway Police*, No. 4:13-CV-00301-JLH, 2013 WL 12320409, at *9 (E.D. Ark. Oct. 7, 2013) (no individual capacity claims under ACRA unless "employer" under statute). Summary judgment is denied as moot on any AWBA claims against Hammett in his individual capacity because such claims are not brought by plaintiffs. *See* Resp., Doc. No. 23.

F.    Punitive Damages

Summary judgment is granted on claims for punitive damages against the board or Hammett in his official capacity, and for claims under the AWBA. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989) (public school districts are municipal entities); *Grisson v.* Cole, 3:06-CV-00037-BD, 2008 WL 276582, at *2 (E.D. Ark. Jan. 30, 2007) (no punitive damages against individual in his official capacity because such a claim is a claim against the city); Ark. Code Ann. § 21-1-605 (no provision for punitive damages). Summary judgment is denied on claims for punitive damages against Hammett in his individual capacity because a reasonable jury could find that Hammett acted intentionally and maliciously. *Shaub v. VonWald*, 638 F.3d 905, 923 (8th Cir. 2011).

IV. CONCLUSION

For these reasons, defendants' motion for summary judgment is granted on plaintiffs' First Amendment retaliation claims under section 1983 and the Arkansas Civil Rights Act (ACRA), plaintiffs' Title VII claims, and plaintiffs' individual capacity claims against

Hammett under the Arkansas Civil Rights Act.  Summary judgment is granted in part and denied in part on the issue of punitive damages.  Plaintiffs' due process and Arkansas Whistleblower Act claims may proceed.

IT IS SO ORDERED this 6th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE